```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - x
                                           :
UNITED STATES OF AMERICA                   :     SUPERSEDING
                                                 INDICTMENT
          -v.-                             :
                                                 S1 08 Cr. 331 (VM)
ASQUITH REID, and                          :
JOYCINTH ANDERSON,                         :
    a/k/a "Sue,"
                                           :
               Defendants.
                                           :
- - - - - - - - - - - - - - - - - - - - - x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 2 4 2008

COUNT ONE

(Conspiracy to Commit Mail Fraud)

The Grand Jury charges:

The Defendants

1.   From at least in or about June 2004 through at least in or about December 2007, ASQUITH REID, the defendant, was employed as the Chief of Staff to a member of the New York City Council (the "Council Member").

2.   From at least in or about 2006 through at least in or about December 2007, JOYCINTH ANDERSON, a/k/a "Sue," the defendant, was employed as a staffer in the office of the Council Member.

New York City Council Discretionary Funds

3.   Since at least in or about 2003, the New York City Council (the "Council") has allocated millions of dollars annually in funds to certain non-profit organizations purportedly for the public benefit. Public expenditures made as a result of

such allocations have been referred to as "discretionary funds." Elected members of the Council have had broad discretion to designate the non-profits eligible to receive such funds. In each year since in or about 2003, at the time the budget was passed, the Council has identified the non-profits receiving discretionary funds in Schedule C to the budget.

4. Since at least in or about 2003, each Council member has controlled a certain portion of discretionary funds for designation to non-profit organizations. Council members have designated various non-profits to receive their allotments of discretionary funds. Non-profits have then been required to apply through a intermediary, often a New York City agency, for actual disbursement of the funds.

5. In addition to the discretionary funds distributed at the time of the annual budget, since at least in or about 2003, millions of dollars worth of additional discretionary funds have been allocated to "holding codes" in the names of fictitious non-profits. Each year since at least 2003, after the passage of the budget, the funds in the holding codes have been distributed to various non-profits associated with various Council members.

6. Since at least in or about June 2004, in his role as Chief of Staff to the Council Member, ASQUITH REID, the defendant, has been the contact person for the Council Member's requests for discretionary funds.

## The Donna Reid Memorial Education Fund

7.  At all times relevant to this Indictment, the Donna Reid Memorial Education Fund (the "Donna Reid Fund") has been a non-profit organization in the State of New York. At the time it was organized, the Donna Reid Fund's mission, as set forth in the Certificate of Incorporation, was to provide educational assistance to public school children by way of after school tutoring in various topics, and to provide assistance to various Parent Teacher Associations of public schools by assisting them in the establishment of educational programs for children.

8.  Since in or about April 2005, the Council Member has allocated approximately $356,000 in discretionary funds to the Donna Reid Fund. During this time period, discretionary funds allocated by the Council Member have constituted more than three-quarters of the Donna Reid Fund's total income.

9.  In or about June 2004, the Council Member first designated the Donna Reid Fund as a recipient of discretionary funds. In or about August 2004, the Donna Reid Fund then applied for the funds through the New York City Department for the Aging ("DFTA"). In reviewing the Donna Reid Fund's application for discretionary funds, however, DFTA employees found improprieties, and rejected the application. Specifically, DFTA employees found an improper conflict of interest based on the fact that the

address reported for the Donna Reid Fund was the address of the residence of the Council Member's Chief of Staff, ASQUITH REID, the defendant.

10. In or about November 2004, after DFTA rejected the Donna Reid Fund's initial application, the Donna Reid Fund applied for the discretionary funds through the New York City Department of Youth and Community Development ("DYCD"). DYCD employees approved the Donna Reid Fund's application. Since in or about November 2004, DYCD has disbursed approximately $356,000 in discretionary funds to the Donna Reid Fund. Nearly all the discretionary funds have been wire transferred from City of New York bank accounts to the Donna Reid Fund's bank account in New York, New York.

11. In or about March 2007, the New York City Council's Division of Finance directed that approximately $14,000 in discretionary funds which had been initially allocated to holding codes in the names of two fictitious non-profits -- New York Foundation for Community Development and American Association of Concerned Veterans -- be provided to the Donna Reid Fund. These funds were ultimately wire transferred from City of New York bank accounts to the Donna Reid Fund's bank account in New York, New York.

<u>Additional Non-Profit Organizations Controlled by Asquith Reid</u>

      12.  In or about July 2003, the Council Member allocated funding to an organization known as "Community Opportunity and Resource Development" ("CORD"). At that time, the Council Member signed a form recommending funding for CORD (the "Funding Form") that described CORD's mission as: "People to do research, collect data, knock on doors and collect information on resources, available to children, seniors, and children's organizations, outreach to [high school] seniors who do not avail themselves of services available [sic], match providers with recipients of children's services, promote the value of intergenerational relationship [sic]." The Funding Form listed the residential address of ASQUITH REID, the defendant, as the program address for CORD. JOYCINTH ANDERSON, a/k/a/ "Sue," the defendant, was described as a paid "consultant" to CORD in program materials.

      13.  From in or about June 2004 through in or about November 2004, CORD received approximately $14,500 in Council discretionary funding from DYCD, which was transmitted through a fiscal conduit (the "Fiscal Conduit,") a non-profit whose role in this transaction was merely to act as a pass-through for discretionary funds from the Council.

      14.  In or about March 2006, DYCD registered a contract allocating $35,000 in Council discretionary funding to an

organization called "Central Brooklyn Community Services" ("CBCS"). CBCS also received approximately $11,000 in additional funding from other sources. CBCS was a non-profit organization designated by the Council Member to receive Council discretionary funding. According to documents submitted to the City of New York by CBCS, the program address for CBCS was the residence of ASQUITH REID, the defendant, and the sole paid consultant to CBCS was JOYCINTH ANDERSON, a/k/a "Sue," the defendant.

<u>The Means And Methods Of The Conspiracy</u>

15. At all times relevant to this Indictment, the stated mission of the Donna Reid Fund was to engage in various non-profit activities, such as to provide educational assistance to public school children. During that time, however, the Donna Reid Fund primarily served as a conduit to provide cash and other personal benefits to ASQUITH REID, the defendant, and his criminal associates.

16. Since April 2005, while some portion of the approximately $356,000 in discretionary funds provided to the Donna Reid Fund appears to have been used for legitimate purposes, ASQUITH REID, the defendant, and his criminal associates, including JOYCINTH ANDERSON, a/k/a "Sue," the defendant, embezzled at least $145,000 of the money. REID, aided

by ANDERSON and other co-conspirators, embezzled the funds in a variety of ways, including, but not limited to:

    a.    requesting a co-conspirator not named as a defendant herein ("CC-1") to cash more than $51,000 in checks issued by the Donna Reid Fund;

    b.    requesting a co-conspirator not named as a defendant herein ("CC-2") to cash more than $22,000 in checks issued by the Donna Reid Fund;

    c.    requesting ANDERSON to cash approximately $20,000 in checks issued by the Donna Reid Fund;

    d.    sending approximately $31,000 in Donna Reid Fund monies to individuals, including family members and friends, in Jamaica via Western Union wire transfers; and

    e.    spending approximately $18,000 on a hall used for events for a political club controlled by the Council Member, and spending more than $3,000 on campaign literature for the Council Member.

    17.    At all times relevant to this Indictment, both CORD and CBCS were purportedly non-profit organizations providing services to the community. The primary function of both CORD and CBCS, however, was to funnel taxpayer money to ASQUITH REID, the defendant, and his criminal associates for their personal benefit. Although one of REID's co-conspirators - CC-1 - was listed in the contracts as the "Executive Director" of both CORD

and CBCS, CC-1 had no knowledge of the services ostensibly being provided by CORD and/or CBCS. CC-1's sole function was to sign official documents for CORD and CBCS, including batches of blank checks, at REID's direction. Similarly, the individual listed in CBCS documents as the board president (the "Board President") never attended a CBCS board meeting, and did not know the other individuals listed as board members in official documents submitted by CBCS. The Board President's sole responsibility for CBCS was to sign blank CBCS checks at REID's direction.

      18. In truth and in fact, CORD and CBCS provided minimal, if any, services to the community, and tens of thousands of dollars in discretionary funding allocated to both CORD and CBCS were embezzled by ASQUITH REID, the defendant, for the benefit of himself and his criminal associates. According to CORD's financial records, in or about September 2004, REID withdrew $10,000 in cash from the CORD account approximately one week immediately after the initial disbursement of $12,200 in discretionary funds. In addition, from in or about June 2006 to in or about November 2006, REID withdrew approximately $12,000 from the CBCS bank account. From in or about December 2005 to in or about May 2006, JOYCINTH ANDERSON, the defendant, received approximately $26,000 in checks from the CBCS bank account.

Statutory Allegation

(Conspiracy to Commit Mail Fraud)

19.   From at least in or about June 2004 through at least in or about December 2007, in the Southern District of New York and elsewhere, ASQUITH REID and JOYCINTH ANDERSON, a/k/a "Sue," the defendants, together with others known and unknown, unlawfully, wilfully and knowingly would and did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Section 1341.

20.   It was a part and an object of the conspiracy that ASQUITH REID and JOYCINTH ANDERSON, a/k/a "Sue," the defendants, and their co-conspirators, unlawfully, wilfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises, to wit, a scheme to embezzle New York City money from non-profit organizations, including the Donna Reid Fund, would and did, for the purpose of executing such scheme and artifice and attempting to do so, cause mail matter to be sent and delivered by the United States Postal Service, and to deposit and to cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and to take and to receive therefrom, matters and things, and knowingly to cause such matters and things to be delivered by mail and such carriers

according to the direction thereon, to wit, written confirmations from New York City regarding wire transfers of discretionary funds to the Donna Reid Fund and Central Brooklyn Community Services, in violation of Title 18, United States Code, Section 1341.

Overt Acts

21. In furtherance of the conspiracy and to effect the illegal object thereof, ASQUITH REID and JOYCINTH ANDERSON, a/k/a "Sue," the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. From in or about April 2005 through in or about August 2005, approximately $80,000 was transferred from the City of New York to the Donna Reid Fund's bank account in New York, New York.

    b. From in or about May 2005 through in or about June 2005, JOYCINTH ANDERSON, a/k/a "Sue," the defendant, cashed thousands of dollars worth of Donna Reid Fund checks signed by ASQUITH REID, the defendant, and provided cash proceeds to REID.

    c. From in or about May 2005 through in or about November 2007, REID wired approximately $31,000 in cash from Brooklyn, New York, to associates in Jamaica via Western Union.

    d. On or about June 30, 2005, REID signed a check written from the Donna Reid Fund's bank account in New

York, New York, in the amount of $3,011 as a deposit to a printing company.

      e.    On or about May 15, 2005, REID signed a check written from the Donna Reid Fund's bank account in New York, New York, in the amount of $6,652 to Grand Prospect Hall in Brooklyn, New York.

      f.    From in or about September 2004 to in or about November 2006, REID withdrew approximately $22,000 from the CORD and CBCS bank accounts.

      g.    From in or about December 2005 to in or about May 2006, JOYCINTH ANDERSON, the defendant, received approximately $26,000 in checks from the CBCS bank account.

(Title 18, United States Code, Sections 1341 and 1349.)

### COUNT TWO

(Money Laundering Conspiracy)

The Grand Jury further charges:

22.    The allegations contained in paragraphs 1 through 18 are repeated and realleged as if fully stated herein.

23.    From at least in or about June 2004 up to and including at least in or about December 2007, in the Southern District of New York and elsewhere, ASQUITH REID and JOYCINTH ANDERSON, a/k/a "Sue," the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined,

conspired, confederated, and agreed together and with each other to violate of Title 18, United States Code, Section 1956.

24. It was a part and an object of the conspiracy that ASQUITH REID and JOYCINTH ANDERSON, a/k/a "Sue," the defendants, and others known and unknown, would and did conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, knowing that the property involved in such financial transactions involved the proceeds of some form of unlawful activity, to wit, mail fraud, and knowing that such financial transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Overt Acts

25. In furtherance of said conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

  a. From in or about April 2005 through in or about August 2005, approximately $80,000 was transferred from the City of New York to a bank account held in the name of the Donna Reid Fund located in New York, New York.

    b. From in or about May 2005 through at least in or about June 2005, JOYCINTH ANDERSON, a/k/a "Sue," the defendant, cashed thousands of dollars worth of Donna Reid Fund checks signed by ASQUITH REID, the defendant, and provided cash proceeds to REID.

    c. From in or about May 2005 through in or about November 2007, REID wired approximately $31,000 in cash from Brooklyn, New York, to associates in Jamaica via Western Union.

    d. In or about December 2007, Reid contacted a DYCD employee in New York, New York, and inquired about the status of a Donna Reid Fund contract with DYCD.

  (Title 18, United States Code, Section 1956(h).)

COUNT THREE

(Witness Tampering)

The Grand Jury further charges:

  26. In or about January 2008, in the Southern District of New York, ASQUITH REID, the defendant, unlawfully, willfully and knowingly did attempt to corruptly persuade another person, with intent to influence the testimony of a person in an official proceeding, to wit, REID directed a witness who had been subpoenaed in a grand jury proceeding in the United States District Court for the Southern District of New York to lie about working for the Donna Reid Fund and about financial transactions

the witness had conducted with REID.

(Title 18, United States Code, Section 1512(b)(1).)

## COUNT FOUR

(Witness Tampering)

The Grand Jury further charges:

27. In or about February 2008, in the Southern District of New York, ASQUITH REID, the defendant, unlawfully, willfully and knowingly did attempt to corruptly persuade another person, with intent to influence the testimony of a person in an official proceeding, to wit, REID directed a witness who had been subpoenaed in a grand jury proceeding in the United States District Court for the Southern District of New York to lie about working for the Donna Reid Fund and about financial transactions the witness had conducted with REID.

(Title 18, United States Code, Section 1512(b)(1).)

## FORFEITURE ALLEGATION

28. As the result of committing the mail fraud conspiracy offense in violation of 18 U.S.C. § 1341, alleged in Count One, and the money laundering conspiracy offense in violation of 18 U.S.C. § 1956(h), alleged in Count Two, ASQUITH REID and JOYCINTH ANDERSON, a/k/a "Sue," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1), and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes

or is derived from proceeds traceable to the commission of the offenses, including but not limited to the following:

        a.    All proceeds obtained as a result of the offenses alleged in Counts One and Two; and

        b.    All funds on deposit in Account No. 17349508 in the name of the Donna Reid Memorial Education Fund at Citibank N.A.

<u>Substitute Asset Provision</u>

        29.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (1) cannot be located upon the exercise of due diligence;

        (2) has been transferred or sold to, or deposited with, a third person;

        (3) has been placed beyond the jurisdiction of the Court;

        (4) has been substantially diminished in value; or

        (5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of said defendant(s) up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981(a)(1),
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

_____          _____
FOREPERSON                         MICHAEL J. GARCIA
                                   United States Attorney for the
                                   Southern District of New York

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

- v. -

**ASQUITH REID,**
**JOYCINTH ANDERSON, a/k/a "Sue,"**

Defendants.

---

**INDICTMENT**

S1 08 Cr. 331 (VM)

(Title 18 United States Code,
Sections 1341, 1349, 1956(h),
1512(b)(1).)

---

MICHAEL J. GARCIA
United States Attorney

**A TRUE BILL**

_____
Foreperson.

---

6-24-08    Filed Indictment.    Pitman,
                                 U.S.M.J